Good morning, Your Honors. My name is Hania Sohail and I represent Petitioner Carl Albert in this matter. Petitioner was working for City of Peoria as a temporary worker when he alleged that he sustained accidental injuries on or about February 12, 2014, when he was repetitively exposed to cold weather, resulting in frostbite. resulting in the need for right-brain-toe amputation. The two questions that are presented for review in front of this appellate court is, one, whether the Illinois Workers' Compensation Commission decision finding that Petitioner failed to prove accident that arose out of and during the course of Petitioner's employment with a respondent is against the manifest rate of the evidence. The second issue presented for review is the issue of causation, whether the Workers' Compensation Commission decision that Petitioner did not prove medical causation is against the manifest rate of the evidence. Jumping into the issue of causation, after the three incidents Petitioner testified that he was involved in, he testified that after the first one he started having pain with regards to his right foot. He testified that after the second one, the blister on his right great toe started seeping out and he started to self-treat. After the third one, he testified that a few days after the third one, his right great toe was bad enough to the point that he was experiencing sharp pain going down up his leg that he had to seek medical treatment. Let me just interject. One of the problems, perhaps, is that Drs. Levin and DeSouza opine that the claimant did not incur frostbite initially. So how do we overcome that? Well, Your Honor, if you look at Dr. DeSouza's opinion, and if you look at Dr. Levin's opinion, and let me address Dr. Levin's opinion first. Dr. Levin's opinion was all focused on the point that Dr. Garst never diagnosed this individual with frostbite. She agreed that the gold standard to diagnose a frostbite is physical examination. Well, who performed the physical examination on the great toe and it was still intact? That was Dr. Garst. So Dr. Garst testified, I have independent recollection of this petitioner. I saw looking at his toe, he had a frostbite. So I think that Dr. Garst's opinion, you certainly should find Dr. Levin's opinion not to be persuasive because Dr. Levin not diagnosing the frostbite was all relied upon the fact that Dr. Garst never diagnosed the frostbite. Same situation with Dr. DeSouza. Dr. DeSouza in his initial report, or in his original IME report, stated that based on his review of the initial ER records, which did not talk about frostbite, he does not believe the petitioner had a frostbite. You're saying Levin and DeSouza, because it was postoperative, they were not in the same position as Garst? Exactly, Your Honor, because I think the frostbite, and again, as confirmed by Dr. Levin and confirmed by Dr. Garst, the best way to diagnose frostbite is through physical examination. Well, that's not quite why Dr. Levin said that there was no frostbite. She testified that the symptoms of frostbite do not include an isolated blister. Further notes that frostbite is intensely painful and would not likely to be amenable to gradual self-treatment as described by the claimant. And that the amputation of the toe was caused by extremely poor care of the blister, including cutting and allowing a dog to lick the wound. I mean, she had reasons why there was no frostbite. And Garst testified that the notes indicate that the claimant subjectively reported frostbite, but there's no record in her records that he diagnosed frostbite. Then he testified that his recollection was that the claimant did have frostbite. So then he had medical reasons why there was, in her opinion, was no frostbite. This isn't just something that she picked out of records. Well, Your Honor, Dr. Levin did agree that the gold standard, the best way, forget the subjective, the best way to diagnose a frostbite is physical examination. Now, she also agreed that the three exposures petitioner claimed are the type of exposures that will or can cause frostbite. Dr. Garst, I agree that Dr. Garst's medical records did not discuss frostbite, but Dr. Garst stated that he has independent recollection. Nobody challenged the fact that he has independent recollection. He stated he remember looking at it, it was frostbite. With regards also to the opinions of Dr. Levin, if you look at Dr. Levin's opinion carefully, and as argued by the respondent in his brief, Dr. Levin did say that this individual had blister and poor care of which led to the need for right toe amputation. Now, petitioner does agree and did testify that his dog did lick his wound. He did deny that he ever excised his blister. But even for a fact, even for a second, if we believe that petitioner did excise his blister, pursuant to the appellate court case in Duntiman that was decided by this appellate court approximately two years ago, the fact that petitioner took bad care of his blister still did not break the causation. Are there any limits to the but-for test? So no matter what a claimant does following an injury, they can recover? There's no way to ever break the chain? No, Your Honor, it can break the chain. But in order for an employer to be relieved of liability, the intervening accident should be such of nature that breaks the causal connection chain. Well, this is an unusual set of facts. I'm sure you were intrigued, like the rest of us, of the dog licking the wound seemed to be pretty extreme. And the dog did lick the wound, Your Honor, but as Dr. Garst testified, that when someone has a frostbite, the supply, the blood supply to that toe is not good and somebody is more prone to infection. Now, just going back to Duntiman, if a dog licks someone's toe, they don't have a blister, they don't have a frostbite, what's going to happen? Nothing is going to happen. So even if you follow Dr. Levin, even if he had a blister and the dog licked it, he exercised it, that caused his need for the right great toe amputation. If he didn't, if his toe was normal, he wouldn't have been exercising it. The dog would have been not licking it. So even if you look at Dr. Levin's opinion, whether you find it not persuasive based on the fact that her opinion was based on the fact that Dr. Garst never diagnosed this individual's frostbite, but even if you are persuaded by her opinion, regardless, she is giving causation. So you're saying Duntiman would have covered the situation. Correct. However, would you agree that unless we would find there was frostbite initially, we'd never get to the intervening accident issue, period? Well, Your Honor, I don't think in terms of causation it would matter. Our theory of liability, Petitioner, pursuant to Petitioner's treating physician, he says he had a frostbite. The other two doctors, and I will get into Dr. D'Souza's too, they didn't believe he had a frostbite. Right. But regardless stated that his condition was causally related to the exposure he had. So if you factor in Duntiman and you look at these two doctors' opinions, the two respondents, I.E. doctor's opinion, they both are giving causation. How are they giving causation when they say they didn't have frostbite? They're giving causation because they're saying that the exposure that he had led to a blister. Levin says led to a blister, poor care of it, resulted in right great toe amputation. Levin said exactly the opposite. Levin said that frostbite would not result in a blister. And that's what she said. Didn't say that it did. Said it wouldn't. It's not a symptom of frostbite. Second of all, your client has a credibility problem. He never, according to the report, he claimed that he was in this truck with this defective pedal. He never drove that truck according to the records that were introduced. They specifically found that he demonstrated he is not a credible witness. So they disbelieve that there was ever accident at all. And in responding to your argument, Your Honor, or your question rather, with regards to Levin, I agree Levin didn't say he had a frostbite, but said he had a blister. She agreed he had a blister, poor care of it, led to right great toe amputation. With regards to credibility issue, if you look at the commission decision, commission finds this petitioner not credible mainly due to the fact that he did not remember the exact date. This is a repetitive exposure claim. He also, he claimed he drove a specific truck. The records establish he never drove that truck. And second of all, that truck had nothing wrong with it. Well, if you read the opinion or the testimony of Bob William, who was a fleet manager, he testified that 99.5% of the time, not 100% of the time, if there is an issue with the truck or the truck's malfunction, that a work order is submitted. Petitioner himself testified that he spoke to somebody named David Haste. The fleet manager agreed if somebody will call if there's issues with the truck. They never produced Bob William, or David Haste rather. They never produced him to say that this petitioner never called. Whether a heating problem was reported or not, petitioner does not know. Petitioner never filled out a work order. So just because there was no work order doesn't mean that there was nothing wrong with the heating of the truck. What did he report to the state? If there was a problem with the truck, he had a blister. What did he report according to you? What he reported was he was driving this truck. There was no heat going down into the floorboard of the truck. And then there was no heat going on the floorboard of the truck. His right foot kept slipping off the pedal. Resulting in the frostbite, is that what? Well, he said he had a blister after that. And then there were two other exposures. So just going a little bit into Dr. D'Souza's opinion too, Dr. D'Souza discussed, Your Honor, there are two reports. In one report he says this petitioner had a blister, which was due to the first accident of the foot slipping off the pedal. And somebody who has neuropathy, this can lead to osteomyelitis, which can result in the right grade II amputation. On the very same day, he also issued an addendum and says, Well, I have reviewed the additional medical records. I have reviewed the cultures. And the dog licking wound in this particular petitioner did cause bestiorella. Well, he didn't say that I'm retracting my earlier opinion on causation. He didn't say that a blister with neuropathy cannot cause osteomyelitis. He didn't say that both these situations are mutually exclusive. Just because one thing caused something doesn't mean that the other thing cannot cause. So I don't know why Dr. D'Souza wasn't opposed to clarify his opinion. So if you read Dr. D'Souza's opinion, he is giving causation. With regards to the commission finding of accident, Your Honor. So from that opinion, it's not frostbite. Your Honor, Dr. Levin and Dr. D'Souza is not saying that he had a frostbite. I agree with that. But regardless, the commission says, or the work comp act says, that in order to prove your case, you have to prove that the work activities or work exposure or work accident was a cause of your present condition. What is the present condition? The present condition is right grade 2 amputation. Garth says you got there by frostbite. Levin and D'Souza are saying you got there by a blister.  With regards to the... If you accept the, being in truck 159, that there's no heater and that there's ice on the floor and on the pedals. So he had three separate incidents, Your Honor. With regards to the first accident, even though he testified initially... The snow shoveling incident, 12 hours, no, 3 hours. The standing in water in a main incident, we don't even do that. That was the respondent's responses to those three incidents, right? Well, yes. But I disagree with their responses. So let's focus on the second accident. Second accident, petitioner testified he was working a 12-hour shift, which he did. They agreed that he is responsible for working a 12-hour shift. He never said, I was shoveling snow 12 hours straight. He didn't say that. The commission and respondent is arguing and denying this. The second accident is he never shoveled snow 12 hours straight. Well, he never said that. The other issue that they're also disputing and the commission noted in their decision about the second accident is that Simon was never provided notice of the second accident. Well, they stipulated notice, so I don't think they can, after stipulating to notice, they can use notice to dispute accident. You said that in your brief. Where in heaven's name did you come up with that? Merely because they say they got notice, they can't dispute accident. What if the guy lied to them and said, I was injured at work on such and such a date? That's notice. That doesn't mean he was injured on that date. I'm not arguing, Your Honor, that because they claim notice, they cannot dispute accident. That's what you just said. What I'm saying, Your Honor, is if they're using, the commission used the fact that the respondent didn't get notice of the second accident. So you can claim they got notice of all the accidents, but then also use the fact that they never got notice to dispute accident. I agree that notice and accident are two very separate issues. But in this case, if you already stipulated to one thing, you can't use that to deny another issue. What was the mechanism of injury? And then your time is up. You'll have five minutes to reply. I'll ask you to reply. Thank you, Your Honor. I don't have any more time. Very good. If it pleases the Court, Counsel, my name is David West. I represent the respondent, the city of Peoria, in this matter. At the outset, it's important to note one thing that's not in dispute in this case, and that is a standard of review that this Court should apply. Both parties agree that it is a manifest weight standard. And as this Court is aware, this is a very high standard for an appellant to overcome. This Court must only look for facts that are sufficient in the record to support the commission's decision, not to determine if there was some other outcome that this Court believes the facts would support. Further, witness credibility and the weight of the evidence is properly decided by the commission and should we have great deference given to the commission in that regard. As we kind of, in reviewing the record, I think it's fair to say that it is somewhat of a convoluted case in terms of the fact patterns and the allegations and so forth. There's obviously an accident issue and there is a causation issue. The commission has done really a great job for this Court in very even-handedly describing all the evidence that was submitted, going through all the arguments for accident, assigning express credibility findings for a variety of the witnesses, and further expressly stating how is the commission weighing the evidence to come up with the solution or the outcome that they decided. The petitioner has a high hurdle to overcome at the appellate level because he must not only show that the commission was wrong and against the manifest weight of the evidence as to the accident portion of the claim, but must also show that the commission was wrong as of the causation portion of the claim as well. And so as an employee must prove by the preponderance of the evidence that all the claims have been satisfied, basically this Court must not only find on causation but on accident as well. We're pretty familiar with the standards of review. So where did this blister come from? I'm sorry? Where did this blister... There was no finding by the commission as to the source of the blister. The commission had considered the evidence of the petitioner as far as what caused the accident and had determined that, as one of the justices had said during the prior argument, that the commission found that the employee lacked credibility. And so there is no explanation on the record as to what caused the blister. Can you help me? What's the accident if you define the accident? What caused the accident? What do you believe is the accident? So what is the accident is a little... It's difficult to pin down based on the various allegations that have been made. If you look at the application for adjustment of claim, the accident is repetitive exposure to frostbite leading to amputation. That is what the petitioner put forward and stated that they were going to prove. Based on the argument that we just heard, it appears that they are moving away from a frostbite as being what they need to prove to show an accident occurred. Well, how do you respond to that? Let's assume that it wasn't frostbite. I'm sorry, sir? Let's assume that it wasn't frostbite. What if he got a blister from work-related activity? So, again, this is assuming that we overturn the commission's findings that there was an accident. I mean, we can go ahead and speculate all the way we want to, but you're saying the adjustment of claim was specific to what the pleading was? It was specifically for frostbite, so I believe that it's appropriate for this court to hold the employee to what he's actually alleging and have him prove that. There was no shooting in the alternative? To the extent that this court wishes to allow him to proceed with a blister argument. We're not saying we're going to do that, but I'm just – her argument, you might have some intuitive appeal. She's saying, as I understand, well, even if it wasn't frostbite, if the blister was caused, the initial problem was work-related, and then the dog comes in whatever, they're alleging they're still hanging in there under the accident causation. So if we go through the analysis that the commission went through to arrive at its causation opinion, first it started with there was no frostbite. It said that Dr. Levin said no frostbite. Dr. Sousa said no frostbite. Also in the records, Dr. Braun hinted that he did not think there was frostbite. Dr. Ruff, the podiatrist, said that there was not likely frostbite. So the only person was through his personal recollection was Dr. Garz saying that there was frostbite. The commission says the evidence does not support the finding that there was frostbite. In regards to, you know, even if, let's say, there was a work-related blister, and then they analyzed it from that perspective as well. But they didn't. And they said that even if there was a work-related blister, there still is no causation. They went further and did that. I'm sorry, sir? They went further and started analyzing on some other theory that was never articulated in the pleadings. Exactly. They went farther to foreclose that as well. Why did they do that? I can't speculate why they would do that other than to state that I think they saw the totality of the evidence and said, well, you could maybe argue this, but even if we did argue this, we wouldn't accept that. But your opinion, your position would have to be, inevitably, that the claimant didn't prove what the specific cause of the blister was, period. That is true. Does that seem to be what you're saying? They didn't prove any accident that caused the blister. If you look at the medical records or the opinion that the commission came to, they said there is, although the three main doctors' opinions do have some discrepancies between them, there is overlap between the three opinions. First, they all came to the conclusion that the willful delay of treatment that Mr. Albert went through caused his need for amputation, that his self-treatment caused the need for amputation, which was excising the blister with a knife on his own. They also find that a dog licking his open wound caused an infection, which led to an amputation. Under Duntonman, though, you might have a problem. I don't know how far you're going to go with that. Wasn't that a similar issue in Duntonman where the claimant self-treated, did all sorts of things to his foot, and still recovered? So in this case, I mean, every type of self-treatment case would be fact-specific. For instance, the petitioner relies on the Dutton case. In that case, a petitioner did pop a blister with a sterilized needle. I mean, the facts of those two cases are dramatically different. Well, what was in that adjustment of claim in that case? What was the claim was ill-fitting boots, right? That was related directly to a blister. Boots that were directed by the respondent that the employee would wear. And further, Your Honor, the accident wasn't an issue as well. So, I mean, in that case, the employer knew it was a blister. It knew what the cause of the blister was, and the issue in that case was the causation of weather. Well, how did we get into this? When the claimant isn't even putting down an adjustment of claim, that's what we're going for. We're going for frostbite, right? Your Honor, I agree with that position. That is a position that we have argued throughout, that the petitioner was unable to prove frostbite. In the interest of making a full argument as to the facts and protecting my client's interests, we argue on the blister as well to a point that one of the justices raised. Petitioner's argument, you know, the but-for analysis. I mean, I think this is the type of case where if a person lets a wound go for a month long, lets his dog lick it, cuts it with his own knife at home, denies treatment from the employer on multiple occasions, and then results in having to have his... I mean, the medical testimony is kind of pretty visceral, where it describes a toe being sausage-like and, you know, pus coming out of it. And for a person to allow his toe to get to that point, if those willful actions don't break causation chain, then I have a hard time coming up with a hypothetical... In summary, you're saying there has to be, as I asked the opposing counsel, there has to be some limits to the bounds of the Dunteman decision.  If the claimant were to cut off his own toe, he can't claim that the but-for, I wouldn't have cut off my toe if I hadn't had an injury. And, you know, but... I mean, if you apply the but-for test to what happened, but-for the blister, he had pastorella from a dog licking it. I mean, I don't know if that but-for follows or so forth and so on. Another way to look at it is the natural consequences of it. Natural consequences of a blister is not to have self-treatment for over a month. It's not to have your dog lick it, so forth and so on. So, I would... This court can rely and review the petition's very detailed findings as far as accident. It found that Mr. Albert relied almost solely on his testimony and that he was not a credible witness. Mr. Albert seems to indicate, you know, shortcomings in the city's rebuttal evidence. However, he confuses that it is not the city's burden to prove that these incidents didn't occur. It's his burden to prove that an accident did occur. The commission reviewed the rebuttal evidence and found that the weight and totality of the evidence was against the finding of accident. And we have discussed the causation at some length. The same applies there. They have gone through each of the medical testimony opinions, which is their purview to determine credibility and weigh the evidence. And they came to a conclusion that the weight of medical evidence does not support frostbite and further does not support causation, even if you looked at it from a blister perspective. Again, I want to stress the high burden and hurdle that a petitioner has to overcome. And before we even really discuss some of the more exciting causation arguments, they have to get over the accident, and they didn't prove accident either. They have to prove accident. They have to prove causation in order to sustain a claim under the Workers' Compensation Act. So for that, we respectfully request that this court uphold the commission's findings. Thank you, counsel. Counsel, you have five minutes on the clock. Your Honor, before I begin, you had a question for me. I think it's been answered. Thank you. No problem, Your Honor. Your Honor, going into the pleadings, so it may touch upon the question that you were trying to ask. With regards to what is the mechanism here, the mechanism is repetitive exposure to cold. That's what petitioners are asserting. Petitioners' tweeting doctor said that resulted in frostbite. The other two doctors say that it resulted in frostbite. The Work Comp Act is designed to benefit the injured employee. The pleadings that you file in a work comp are to be liberally construed. There are many applications for just a claim that are filed stating injured during the course of employment. They are to be liberally construed. So what did you say in your assessment? I said repetitive exposure to cold leading to frostbite leading to amputation. And I said that because that is what the tweeting physician said, Your Honor. But, Your Honor, what is required for a claimant to prove his work comp case is, did petitioners sustain injuries that arose out of and during the course of petitioner's employment with a respondent? Okay, so really you had to show repetitive exposure to cold. Correct, Your Honor. And what was the evidence that there was repetitive exposure to cold that the, where did the commission go wrong in making the finding there wasn't? Because that would seem to be logically what they have found is that there wasn't repetitive exposure. Or did they? Well, I don't think they logically found that, Your Honor. That's why I'm arguing manifest fate of the evidence. I think with regards to the first incident, they just denied it based on the fact that there was no work order. They ignored testimony that says there could be that there, you know, there was a problem and there was no heating order filled out. They also denied because the petitioner could not remember the exact date. Wait a minute. I don't follow this, ma'am. The records of the employer show that no one ever turned a truck in because of a defective heater. And your answer is the commission shouldn't have found that way because someone, it could have been defective. Is that your argument? No, Your Honor. My argument is that the commission should have not found it that way because their own, the fleet manager, testified that there could be times when there is a malfunction of the truck and no order is submitted. Ma'am, I don't want to be trite, but years ago we said the moon could have been made out of green cheese, too. I mean, what could be is infinite. The question is what is. And the what is, there is no record of any defective heater. He didn't drive truck 159 at all, especially when he claimed he did. They just simply didn't believe him. He was telling a story that there was no corroboration for, none whatsoever. And just to respond to that, Your Honor, I believe that when you say, when someone say, you know, everything is possible, that's a different story. That's not what happened here. The fleet manager says 99.5% of the time. So there is a .5% error rate, which he agreed to. So I don't think it's, you know. Ma'am, nothing is positive to 100%, but 99%, 1%, is pretty good proof, isn't it? It's certainly a preponderance. I wouldn't agree with that, Your Honor, because Petitioner is saying there were problems. He said he notified David Hayes. If really there was an issue, this was a two-day trial, why did they not bring David Hayes to testify and rebut? Why did they not do that? Bob Williams agreed that David Hayes is the individual, if there's a problem, that he is notified, and Petitioner says he notified that. Petitioner testified. Well, this is the missing witness. This is a missing witness that apparently works. And their finder fact is permitted to make adverse inferences. But they chose not to. They chose not to, Your Honor. Unless he was equally available to you. There's a little bit of twist in the missing witness rule, isn't there? If I'm not mistaken, Your Honor, I believe that Sy Maroon testified that he was still working for City of Peoria at that time. And it's just not the first incident, Your Honor. There's three incidents that we are talking about. I mean, I understand what the commission found, but how about second accident and third accident? There's no evidence. The commission didn't believe that they ever happened. As to the third accident, the commission said, wait a minute. We don't fix these pipes. This is done by an outside agency. It's not done by our employees. The thing that, you know, the commission simply didn't believe your client. They didn't believe your client vis-a-vis the alleged frostbite foot slipping off a pedal without a heater. They didn't believe him for the other two incidents either. I mean, there's a lot of holes in his testimony. And I think there's a lot of basis for the commission not to believe him. And just, Your Honor, I know my time is up, but would you like me to respond to your? Yes, please do. Okay. Your Honor, I think the commission's finding of credibility is against the manifest rate of the evidence because if you look at the evidence as a whole, the incident where you're talking about where they said that, you know, we don't do that. He says we don't do that, but, you know, there's been time when the maintenance workers cannot get there and employees will go in, you know, clean the drains. So, really, it's not a matter of how long were you exposed. It's a matter of the fact that you were exposed. You know, whether we are talking about 12 hours straight, whether we are talking about standing in water, still water for four hours. The point is that no evidence that the respondent presented actually rebutted as to what petitioner testified to. So I do believe that the commission finding of accident, commission finding of manifest, or credibility, rather, is manifest rate of the evidence. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement.